IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**SABIEN RUFFIN**                                                                                      **PLAINTIFF**

**v.**                                                                    **CIVIL ACTION NO. 2:25-cv-169-TBM-RPM**

**CHARLIE TURNER,** *et al.*                                                                            **DEFENDANTS**

## ORDER

After smoking marijuana in his government-subsidized residence, the local housing authority threatened to evict *pro se* Plaintiff Sabien Ruffin. In response, Ruffin sued the housing authority and its employees for alleged constitutional violations in federal court. More than two months later, Ruffin has not served the defendants, still lives at the residence, and now moves for an *ex parte* temporary restraining order, seeking to enjoin the eviction, despite Mississippi law providing the same remedies that he now requests. The Court declines Ruffin's invitation to wade into the state court's jurisdiction without a developed record.

Ruffin's motion is denied for a number of reasons. First, the primary purpose of a temporary restraining order is to maintain the status quo. But Ruffin is seeking to change it—not maintain it. Mississippi law provides for judicial remedies in state court proceedings for this type of eviction. Ruffin is essentially asking this court to enjoin all state judicial proceedings relating to his eviction. As a result, it is the state court proceedings that acquaint to the status quo. Second, Ruffin does not establish a substantial likelihood of success on the merits. Ruffin does not cite any case law or present much evidence to support his assertions. Third, Ruffin has not shown a substantial threat of irreparable injury. It is not irreparable because he has not shown that he cannot seek what he wants through the Mississippi judicial system. Fourth, Ruffin's threatened injuries

do not outweigh those to the defendants if the motion is denied because Ruffin has not substantiated why the eviction is impending. His continued residence since filing this lawsuit suggests otherwise. On the other hand, granting the restraining order would prohibit the housing authority from invoking its Mississippi statutory right to the state court judicial process. And fifth, granting the temporary restraining order would disserve the public interest by effectively overriding the state court judicial process and could take at least one low-income housing opportunity off the market that law-abiding citizens may need. Accordingly, the Court denies Ruffin's [5] motion to the extent it seeks an *ex parte* temporary restraining order and takes under advisement the portion of it that seeks a preliminary injunction.

## I. FACTS

Ruffin leased a residential unit from the Laurel Housing Authority ("LHA"). [1], p. 2. On August 26, 2025, Defendant Semeka Brown-Seals, a LHA property manager, warned Ruffin that he was not allowed to smoke inside the residence. [1-1], p. 2. Ruffin agreed to comply. *Id.* Ruffin, however, did not stay true to his word. On October 23, 2025, Seals and a pest control technician were inspecting the property when she noticed a "strong smell of marijuana" coming from Ruffin's unit. *Id.* She reported the smell to Defendant Charlie Turner, an investigator employed by LHA. *Id.* at p. 1. Turner met Seals on site and confirmed "a strong odor of marijuana coming from inside." *Id.*

At this point, the exact sequence of events becomes unclear. It appears that Turner and Seals entered the residence and found Ruffin smoking marijuana. *Id.* at p. 2. Turner then asked Ruffin where the rest of the marijuana was located. *Id.* at p. 1. After some back-and-forth between the two, Turner turned his attention to a drawer on a nightstand. [1], p. 3; [1-1], p. 1. Ruffin's

complaint suggests that he initially refused to open the drawer. *See* [1], p. 3. But after Turner advised him that he could go to jail, Ruffin complied. *Id.*; [1-1], p. 1. Two bags of marijuana and drug paraphernalia were inside the drawer. [1-1], p. 1. Turner confiscated the items before leaving. *Id.*[1]

Five days later, on October 28, 2025, Seals notified Ruffin that LHA had terminated his lease. *Id.* at p. 2. LHA did so, the notice stated, because Ruffin violated his obligations as a tenant. *Id.* Specifically, he violated Section VII, Subsection (L)[2], which prohibits the tenant from engaging in drug-related criminal activity and smoking inside the unit. *Id.* As a result, Ruffin was asked to vacate the residence by November 30, 2025, or LHA would "immediately" commence a judicial proceeding in Jones County Justice Court. *Id.* The notice further stated that Ruffin had the right to contest his lease's termination by "specifying the reason for the Grievance and the action of relief sought" no later than October 29, 2025.

The record suggests that Ruffin did appeal. In response to an email not provided to the Court, Defendant Ailrick Young, LHA's executive director, messaged Ruffin. [1-2]. He noted that LHA received Ruffin's "email and documents dated October 31, 2025." *Id.* But Young confirmed that LHA still intended to proceed with the termination and asked Ruffin to vacate the premises in

---

[1] Ruffin claimed that he had a medical marijuana card but could not produce it at that time. *Id.* Sometime thereafter, a third party sent the card to LHA on Ruffin's behalf. *Id.* But the card expired on March 26, 2025. *Id.*

[2] According to the "Notice to Terminate Lease," Subsection L states in full:

> To ensure that tenant, any members of the household, or guests, or another person tenant control shall not engage in (1) Any criminal activity that threatens the health and safety, or right to peaceful enjoyment of the managements public housing premises by other tenants or employees of management. (2) Violation of the "Zero Tolerance" Policy with regard to criminal activity and/or drug related criminal activity. (3) Violation of Smoke Free Policy.

*Id.*

accordance with the notice. *Id.* The record suggests that Ruffin did not vacate and continues to reside in the residence. *See* [5-1].

Ruffin filed suit on November 14, 2025, against LHA, Seals, Turner, Young, and Felicia Jackson, LHA's Assistant Director. [1], p. 1.[3] Ruffin claims that the defendants violated the Fourth Amendment and the Fourteenth Amendment's Procedural Due Process Clause. *Id.* at p. 3. Yesterday, Ruffin moved for an *ex parte*[4] temporary restraining order and preliminary injunction. *See* [5]. And that was on January 26, 2026, more than two months after Ruffin filed this lawsuit. Ruffin's motion is denied in part.

## II. DISCUSSION

A temporary restraining order is a mechanism for affording relief for a limited time, when immediate and irreparable injury, loss, or damage will result to the movant before a party can be heard in opposition. *See Esparza v. Bd. of Trustees*, 182 F.3d 915, 1999 WL 423109, at *2 (5th Cir. 1999) (citing FED. R. CIV. P. 65(b)). "Similarly, *the purpose of a temporary restraining order is to preserve the status quo* and prevent irreparable harm, but only until the court can hold an adversarial hearing for a preliminary injunction." *Sanders v. Fitch*, No. 1:23-cv-105-BPM-RP, 2023 WL 7782922, at *1 (N.D. Miss. Nov. 15, 2023) (emphasis added) (citing FED. R. CIV. P. 65(b)(3); *Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 438-39, 94 S. Ct. 1113, 39 L. Ed. 2d 435 (1974)). And while a temporary restraining order may be granted *ex parte*, these are disfavored and seldom granted. *Id.* (citing

---

[3] Ruffin sued Seals, Turner, and Jackson in their individual and official capacities. *Id.* He only sued Young in his official capacity. *Id.*

[4] Though the case has been pending for over two months, the record does not reflect that Ruffin has served any defendants.

4

Steven S. Gensler, 1 Federal Rules of Civil Procedure, Rules and Commentary Rule 65, Prac. Commentary); *Evans v. Hall*, No. 4:20-cv-140-NBB-JVM, 2020 WL 5899422, at *1 (N.D. Miss. Oct. 5, 2020).[5]

As the movant, Ruffin must establish (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction will not disserve the public interest. *Speaks v. Kruse*, 445 F.3d 396, 399-400 (5th Cir. 2006) (quotation omitted); *see Hassani v. Napolitano*, No. Civ. A. 3:09-cv-1201-D, 2009 WL 2044596, at *1 (N.D. Tex. July 15, 2009) (finding that "[a] TRO is simply a highly accelerated and temporary form of preliminary injunctive relief," and the movant must establish the same four elements for obtaining a preliminary injunction). "When a party moves for a temporary restraining order or preliminary injunction, the burden of proof is a heavy one." *Trinity USA Operating, LLC v. Barker*, 844 F. Supp. 2d 781, 788 (S.D. Miss. 2011); *Commonwealth Life Ins. Co. v. Neal*, 669 F.2d 300, 303 (5th Cir. 1982) ("The plaintiff bears the burden of persuasion on all four elements."). The first element "is a threshold inquiry and is the most

---

[5] In addition to the four substantive prongs discussed next, Federal Rule of Civil Procedure Rule 65(b) imposes procedural requirements for an *ex parte* temporary restraining order issued without notice. Under Rule 65(b), the Court may only issue such notice if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Ruffin has not met either requirement. As is clearer below, Ruffin's complaint and affidavits are woefully insufficient. At this point in time, the record consists almost entirely of conclusory allegations. Moreover, Ruffin has not certified in any writing that he made efforts to notify the defendants or why such notice should not be required. In fact, it does not appear that Ruffin has even served the defendants with this lawsuit, even though it has been pending since November 14, 2025.

important [element]." *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020). "Thus, a court need not consider the other [elements] if the movant fails to show a likelihood of success on the merits." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (citing *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (cleaned up)).

Also, while this opinion primarily addresses the request for a temporary restraining order, it is important to note that there are three types of "specifically disfavored" preliminary injunctions: (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that he could recover at the conclusion of a full trial on the merits. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1259 (10th Cir. 2005). "Such disfavored injunctions 'must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course.'" *Id.* (citing *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (en banc)). A preliminary injunction that alters the status quo takes the form of a mandatory preliminary injunction. *See Pierce v. N.C. State Bd. of Elections*, 97 F.4th 194, 209 (4th Cir. 2024). And such mandatory injunctions are "warranted only in the most extraordinary circumstances." *Id.*; *see also Romer v. Green Point Sav. Bank*, 27 F.3d 12, 16 (2d Cir. 1994) ("When a district court's order, albeit in the form of a TRO or preliminary injunction, will finally dispose of the matter in dispute, it is not sufficient for the order to be based on a likelihood of success or balance of hardships . . . the district court's decision *must be correct* (insofar as possible in what may be an incomplete record.")) (emphasis added).

### i. Status quo

Rather than maintain the status quo, Ruffin's motion for a temporary restraining order seeks to establish it. Generally, the status quo is defined as the "last peaceable uncontested status" existing between the parties before the dispute developed. *Pendergest-Holt v. Certain Under Writer's at Lloyd's of London*, 681 F. Supp. 2d 816, 836 n.4 (S.D. Tex. 2010) (citing 11A WRIGHT, MILLER & KANE, Federal Practice and Procedure § 2948 (2d ed. 1995)). By preserving the status quo, the court can hold a trial, make findings of fact, render conclusions of law, and issue a remedy. *See In re COVID-Related Restrictions on Religious Servs.*, 285 A.3d 1205, 1228 (Del. Ch. 2022). This preservation is "designed to protect the court's ability to see the case through." *Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 206 (3d Cir. 2024).

It is unclear what the status quo even is at this point based on the sparse record. What is clear, however, is what remedies Mississippi law requires. An eviction action must be brought in the justice court, *see* MISS. CODE ANN. § 11-25-1, or in the county court, *see* MISS. CODE ANN. § 11-25-101. Mississippi law further provides "for a temporary restraining order and preliminary injunction by the circuit court for the county in which the aggrieved party may appeal any ruling from a justice court." *Copeland v. Michaels Corp.*, No. 116CV00074GHDSAA, 2016 WL 2978621, at *2 (N.D. Miss. May 20, 2016). Therefore, since December 1, 2025, the status quo has been this: both parties expected—which is illustrated by the lease agreement—for Mississippi state courts to adjudicate any landlord-tenant disputes that arose between them.

And the record suggests that LHA enforced, or intends to enforce, its expectation by filing an eviction proceeding in Jones County Justice Court. This leaves open three possibilities. If the eviction proceeding is pending, then the Court faces abstention issues. If the eviction proceeding

has concluded, Ruffin is asking the Court to collaterally attack the underlying state judgment. If LHA has not initiated its eviction proceeding, Ruffin is essentially asking the Court to prohibit LHA from using its statutory right to move for a state court judicial eviction proceeding. Under any possibility, Ruffin's request seeks to circumvent the parties' expectations of having this matter resolved in state court. Nevertheless, given the sparse record, the Court will examine the four factors discussed above out of an abundance of caution.

### ii. Substantial likelihood of success on the merits

There is not a substantial likelihood that Ruffin is successful on the merits of his Fourth Amendment or Fourteenth Amendment Procedural Due Process claims. For starters, despite suing three employees in their individual capacity for constitutional violations under Section 1983, Ruffin does not brief qualified immunity at all. Ruffin bore this burden, *see Thomas v. Cohen*, 304 F.3d 563, 569 (6th Cir. 2002), and his failure to do so is immediately fatal. But assuming that was not the case, Ruffin's allegations do not establish that the defendants "deprived [him] of a right protected by the Constitution," *id.*, because he cites no case law and provides little evidence to support his claims.

What facts Ruffin does provide do not suggest that LHA violated the Fourth Amendment. Ruffin seems to concede that he was smoking marijuana in violation of the lease and that the smell had such a strong odor that Young and Seals could smell it from outside the apartment. Also, Ruffin has not pleaded any facts suggesting that Young and Seals entered the residence over his objection. *See Kentucky v. King*, 563 U.S. 452, 463, 131 S. Ct. 1849, 179 L. Ed. 2d 865 (2011) ("[O]fficers may seek consent-based encounters if they are lawfully present in the place where the consensual encounter occurs."). And upon entering, the two saw Ruffin smoking marijuana inside, which

Ruffin does not contest. The smell of marijuana outside the apartment may have provided LHA with sufficient grounds to evict Ruffin, given that he had already been warned once about the "smoke free" policy. Indeed, this was the main ground cited in LHA's notice. *See* [1-1], p. 2 ("Mr. Ruffin is in violation of the smoke free policy. This is a lease violation."). Accordingly, Ruffin has not carried his burden of alleging facts indicating that either Young or Seals violated the Fourth Amendment upon entering his home, where they observed him smoking.

To be sure, Ruffin does claim that he objected to opening the bedside drawer and only did so under the threat of arrest. Nevertheless, LHA did not solely base its eviction decision on the marijuana and paraphernalia found inside his bedside drawer. The Court therefore need not even consider those facts for the purposes of deciding Ruffin's motion for a temporary restraining order. *See Kentucky*, 563 U.S. at 463 ("[T]he Fourth Amendment requires only that the steps preceding the seizure be lawful.").

Ruffin's Fourteenth Amendment Procedural Due Process claim is also insufficient. "Due process generally requires notice and a hearing prior to eviction." *Thomas v. Cohen*, 304 F.3d 563, 577 (6th Cir. 2002). "[T]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Lion Elastomers, L.L.C. v. Nat'l Lab. Rels. Bd.*, 108 F.4th 252, 260 (5th Cir. 2024) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L.Ed.2d 18 (1976)); *see also N.L.R.B. v. Smith Indus., Inc.*, 403 F.2d 889, 895 (5th Cir. 1968) ("While the consideration of whether an administrative body must give notice and an opportunity to be heard to interested individuals frequently involves difficulties of statutory interpretation, the ultimate legal problem is whether the procedure utilized satisfies the guarantee of due process of law."). As Ruffin acknowledges, LHA provided him with notice, which articulated his rights to

9

appeal the eviction. And though Ruffin did not provide the Court with the substance of his grievance, two things are clear from the record. First, Ruffin did invoke his right to contest the conviction in some form. Second, he did so in an untimely manner. Young's response indicates that Ruffin submitted his grievance after the October 29, 2025, deadline in the notice. Ruffin's failure to appropriately contest the eviction does not negate the fact that he had an opportunity to do so in the first place. Not to mention, LHA cannot evict Ruffin without going through the state court judicial process. Therefore, the Court holds that Ruffin is not likely to succeed on the merits of his procedural due process claim either.

The Court's holding comes down to Ruffin's failure to supply the needed factual predicate to decide these legal questions.[6] An evidentiary hearing is required to resolve this dispute. But the "static deficiency in the quantum of evidence" is far from the only problem with Vaughn's request. Samuel L. Bray, *The Purpose of a Preliminary Injunction*, 78 Vand. L. Rev. 809, 822 (2025). The Court is also faced with the issue of time, for "the district judge cannot be said to have the advantage of living with the case and getting to know its factual nuances." *Id.* (quotations omitted). So the Court is being asked to appraise the merits when the information needed to do that is unavailable. *Id.* at n.87 (citing John Leubsdorf, *Preliminary Injunctions: In Defense of the Merits*, 76 Fordham L. Rev. 33, 41 (2007). And the "problem for the judge asked to grant a preliminary

---

[6] Ruffin brings two other claims that do not warrant much analysis. First, Ruffin argues that the defendants violated an unnamed "constitutional" right in retaliation for exercising his "grievance rights." *Id.* at p. 4. The Court deems Ruffin's failure to articulate his constitutional right as forfeiture. *See United States v. Scroggins*, 599 F.3d 433, 446-47 (5th Cir. 2010) (stating, to avoid forfeiture, "a party must 'press' its claims"—meaning, at the very least, "clearly identifying a theory as a proposed basis for deciding the case—merely [intimating] an argument is not the same as 'pressing' it"). Otherwise, the Court's analysis would be mere guesswork. Second, Ruffin argues that the defendants failed to accommodate his disability under Section 504 of the Rehabilitation Act and the Americans with Disabilities Act. But Ruffin does not specify what his disability is or whether LHA knew about the disability. Nor does the record suggest that Ruffin asked LHA for any sort of accommodation.

injunction[7] is that he is being asked to rule in a hurry, on the basis of incomplete information. The risk of error is high." *Id.* (quoting Richard A. Posner, *Economic Analysis of Law* § 21.4, at 522 (3d ed. 1986)). Since this motion was filed, the Court has handled eleven criminal hearings. This is in addition to the time spent out of the courtroom itself that still requires special attention given to other cases in the management of the hundreds of cases on the civil and criminal dockets.

The Fifth Circuit has held this first element to be *sine qua non*, meaning there is no need to proceed to the other elements if the plaintiff is unable to provide a substantial likelihood of success on the merits. *See Walgreen Co. v. Hood*, 275 F.3d 475, 477 (5th Cir. 2001) (affirmed denial of preliminary injunction on the sole basis that there was no substantial basis that the plaintiff would prevail on the merits). But the Court will continue to address the other factors.

### iii. Irreparable injury

Ruffin likely does not face a substantial threat of irreparable injury. The threat of eviction may be substantial to Ruffin, assuming he has an unspecified disability and relies on government housing. But such harm does not appear irreparable in this unique context. "In general, a harm is irreparable where there is no adequate remedy at law, such as monetary damages." *SO Apartments, L.L.C. v. City of San Antonio, Texas*, 109 F.4th 343, 353 (5th Cir. 2024) (quoting *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011)). As noted above, Mississippi law explicitly provides a remedy. Ruffin can fight the eviction in the Mississippi justice court and seek a temporary restraining order and preliminary injunction from a Mississippi circuit court.

Moreover, any harm that Ruffin faces can reasonably be attributed to him. LHA caught him smoking marijuana in the residence on two different occasions. And the record clearly

---

[7] The standard for a temporary restraining order is "substantially identical" to the standard for a preliminary injunction. *Facebook, Inc. v. BrandTotal Ltd.*, 499 F. Supp. 3d 720, 732 (N.D. Cal. 2020).

demonstrates that he was on notice of LHA's smoke-free policy the second time, given Seals's warning. The Court is now faced with making a rushed decision because of Ruffin's decision not to file the temporary restraining order in a timely manner.

### iv. Whether the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted

If the Court denied the temporary restraining order, it is not apparent that Ruffin will suffer any harm. For example, it appears that Ruffin has been living at the residence for nearly two months since his eviction date on November 30, 2025. Ruffin has not stated why his violation is unlikely to continue aside from conclusory allegations of an "impending eviction." *See Poole v. Hous. Auth. for the Town of Vinton,* 202 F. Supp. 3d 617, 628 (W.D. La. 2016) (holding movant did not suffer irreparable injury despite "[t]he judgment of eviction and the events leading up to that judgment violat[ing] the Housing Act" because it did not "escape the court that [the plaintiff] was ultimately allowed to continue residing in her dwelling."). And if Ruffin continues living in the residence, the defendants would be in the same position as they are now.

### v. Public interest

Aside from conclusory allegations, Ruffin fails to show that the temporary restraining order will not have an adverse effect on the public interest. *See Hinton v. King*, Civil Action No. 1:13-cv-528-KS-MTP, 2014 WL 64050, at *1 (S.D. Miss. Jan. 8, 2014). And arguments to the contrary come easily. A temporary restraining order would potentially legitimize Ruffin's alleged unlawful status as a holdover tenant. And it would continue to hinder LHA and its employees from renting the residence to law-abiding citizens who are in need of low-income housing. These effects are not in the public's interest.

For the above reasons, Vaughn has not "clearly carried the burden of persuasion" on the requirements for a temporary restraining order. *Id.*

### III. CONCLUSION

Ruffin's request for an *ex parte* temporary restraining order is denied. The Court is prepared to set a hearing on the request for a preliminary injunction but will first give the parties an opportunity to propose a schedule. Plaintiff shall provide the Defendants a copy of this Order.

IT IS THEREFORE ORDERED AND ADJUDGED that the portion of Ruffin's motion [5] for an *ex parte* Temporary Restraining Order is denied.

IT IS FURTHER ORDERED AND ADJUDGED that the portion of Ruffin's motion [5] for a Preliminary Injunction is taken under advisement.

This, the 27th day of January, 2026.

TAYLOR B. McNEEL<br>
UNITED STATES DISTRICT JUDGE